IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

LISA RYAN MURPHY,
ADC #760343                                                                                          PLAINTIFF

V.                                          1:19CV00110-JTK

TONI BRADY, et al.                                                                                DEFENDANTS

**MEMORANDUM AND ORDER**

Plaintiff Lisa Murphy is a state inmate incarcerated at the McPherson Unit of the Arkansas Department of Correction (ADC). She filed this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to her serious medical needs by numerous Defendants. (Doc. Nos. 2, 8) Defendants Brady, Payne, Hearington, Leuis, Swift, Culclager, Rudd, Malotte, Waylord, Biaza, Vaulner, Campbell, Morrin, Stieve, Griffen, Gardner, Kizer, and Williams were dismissed on April 10, 2020. (Doc. No. 24) On May 28, 2020, Plaintiff's claims against Defendants Hughes and Hutchinson were limited based on her failure to exhaust administrative remedies. (Doc. No. 33)

This matter is before the Court on the Motion for Summary Judgment, Brief in Support, and Statement of Facts filed by remaining Defendants Dr. Joseph Hughes and Advance Practice Registered Nurse (APRN) Betty Hutchinson (Doc. Nos. 61-63), to which Plaintiff responded. (Doc. No. 64)

**I.    Facts**

In her Second Amended Complaint, Plaintiff alleged Defendants acted with deliberate indifference to her need for adequate pain medications and walking appliances. (Doc. No. 8) In the May 28, 2020 Order, Plaintiff's claims against Defendants Hughes and Hutchinson were limited to her claim that they refused to give her pain medication or an appliance to help her walk,

1

which left her "crawling everywhere," and that she begged for help after a fall on August 8, 2019. (Id., pp. 63-66)

## II. Summary Judgment Motion

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants' Motion

Defendants ask the Court to dismiss Plaintiff's claims against them based on the medical records (Doc. No. 60-2) which show that they treated her for her complaints and did not act with deliberate indifference to her serious medical needs. They state that Plaintiff disagreed with their medical decisions, which does not support a claim for relief, and that mere speculation is insufficient to support her claims against them. Finally, Defendants also present the Declaration

of Dr. Nannette Vowell, an internal medicine physician who provides medical services to ADC inmates in the Special Needs Unit of the Ouachita River Unit. (Doc. No. 62-3) Dr. Vowell reviewed Plaintiff's medical records (Doc. No. 62-1) and deposition testimony (Doc. No. 62-2), and concluded that both Defendants provided Plaintiff with appropriate care and treatment, and that Plaintiff did not require an assistive device to ambulate in her cell on August 8, 2019, or to ambulate after her discharge from the infirmary on August 9, 2019. (Doc. No. 62-3, p. 4) In addition, she stated Plaintiff was provided appropriate pain medications since August 8, 2019. (Id.) Her summary of Defendants' treatment, as derived from the medical records, is as follows.

Plaintiff's medical history involves several different physical and mental/psychiatric conditions. (Id., p. 2) Plaintiff is assigned to punitive isolation about ninety percent of the time, and was housed there from August 8, 2019 though the date she filed this lawsuit on November 5, 2019. (Id.) Plaintiff testified she stayed in her cell alone most of the time and did not have a job assignment.(Id.) She also testified that Defendant Hughes referred her to various outside specialists over twenty times in 2019 for various physical complaints. (Id.)

Defendant Hughes conducted a review of Plaintiff's records on July 29, 2019 and noted that the Tramadol she took for pain and the Effexor for mental issues could possibly cause a drug interaction. (Id., Doc. No. 62-1, p. 18) Although Plaintiff did not appear to have problems with the combination, Hughes concluded that the best thing to do was stop the Tramadol unless Psychiatry would stop the Effexor. (Id.) He reviewed the possible interactions of the Effexor with Tramadol, Ibuprofen, Tylenol, Codeine, Hydrocodone, and Oxycodone and concluded that all resulted in interactions except the Tylenol.(Id.) He then discontinued Plaintiff's Tramadol and prescribed Tylenol for pain as long as Plaintiff was taking the Effexor. (Id.)

On August 8, 2019, Plaintiff was examined by a nurse in segregation for complaints of chest pain, and Dr. Hughes gave a verbal order for 20 milligrams of Lisinopril. (Doc. No. 62-3, p. 2) Plaintiff again was examined by a nurse later that day and Hughes added Hydrochlorothiazide to control Plaintiff's blood pressure. (Id.) The nurse noted that no other pain medication was ordered because of interactions with Plaintiff's current medications. (Id.) That afternoon, Plaintiff was taken to the infirmary by stretcher after she complained of a fall in her cell. (Id., p. 3) Hughes examined Plaintiff and found nothing significant, but provided Plaintiff Tylenol for pain, directed that she be observed overnight and examined the next day, and that she also have x-rays the next day. (Id.) A nurse examined Plaintiff a few hours later and noted no signs of acute distress. (Id.) Plaintiff then was transported to the infirmary and Dr. Hughes found her neurologically intact but directed that she stay in the infirmary overnight for observation. (Id.) Later that night a nurse making infirmary rounds noted that Plaintiff "was witnessed sitting up with legs crossed Indian style writing grievances." (Id.)

The next day, August 9, 2019, Hughes again examined Plaintiff and assessed her with having soft tissue injures. (Id.) He noted that she was observed "ambulating in the room going to the bathroom and walking around in her room apparently without any difficulty." (Id.) He concluded she could stand and ambulate and discharged her from the infirmary. (Id.) He also noted that she walked back to her segregation cell. (Id.) The x-rays of Plaintiff's sacrum/coccyx, lumbar spine and cervical spine showed no fractures. (Id.)

Vowell noted from Plaintiff's records and testimony that she previously overdosed on Tramadol, and previously was addicted to methamphetamine, pain pills, and Xanax. (Id., pp. 3-4) In addition, an outside surgeon Hughes sent her to for evaluation of her neck and back did not

4

recommend any assistive devices for ambulation. (Id., p. 4) Finally, Plaintiff testified that after a few hours on August 8, 2019, "I was good." (Id.; Doc. No. 62-2, p. 89)

**B.      Plaintiff's Response**

Plaintiff claims that she experienced issues with numbness and falling several years ago and went to both Defendants for treatment. She convinced them to send her for a MRI which showed a herniated disc and impingement of the thecal sac. She claims Defendants do not like her and called all her outside specialists to tell them not to give her pain medications because she is a drug seeker. She admitted that Dr. Hughes sent her to the Emergency Room after a fall, but that it was just to make it look like he was being a professional. She also claims she was scheduled for neck and back surgery but that Hughes called the surgeon beforehand and told him she was drug-seeking and would probably sue him. She claims Defendants continue to deny her adequate pain medication, and that she suffers from numbness in 98 percent of her body, and must crawl most times.

**C.      Analysis**

To support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course

of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide "verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

The medical records show that Plaintiff was continuously treated by Defendants and others for her back and neck pain, falls, and numerous other medical issues.[1] Following her fall on August 8, 2019, Hughes examined her, ordered x-rays and Tylenol for pain, and overnight observation in the infirmary. (Doc. No. 62-1, p. 33) The records also indicate that Plaintiff initially refused the x-rays on August 9, 2019, but then changed her mind. (Id., p. 35) Also, the records show that in addition to the Tylenol, Plaintiff was prescribed Excedrin for pain, but limited to a certain number of doses per month. (Id., pp. 101-108) The August 9, 2019 x-ray showed no acute fracture or dislocation, mild degenerative changes of the cervical spine and mild osteoarthritis of the lumbar spine, with no need for follow-up. (Id., pp. 109-114) In her deposition, Plaintiff testified

---

[1] Plaintiff's physical complaints include mental health, neck and back pain, diverticulitis, urinary issues, chest pains, and more.

that if Hughes prescribes a drug which is not effective, he is obligated to provide a progressive dose of a stronger medication until Plaintiff no longer feels pain. (Doc. No. 62-2, p. 61) She also stated that she did not remember a specific event involving Defendant Hutchinson, but that Defendant saw her several times and refused to give her medications and appliances. (Id., p. 66) She could not remember if Hutchinson was involved in the August 8, 2019 incident, but claimed she was incompetent and negligent. (Id., p. 67) Despite these allegations, however, Plaintiff provides absolutely no evidence that Defendants acted with deliberate indifference to her serious medical needs or denied her treatment or medication. Her complaint concerns a disagreement with the Defendants' actions and medical decisions (mainly the denial of requested pain relievers and crutches or a wheelchair), and she provides no evidence that those decisions were more than negligent. As noted above, a mere disagreement with a treatment decision does not rise to the level of a constitutional violation. Estate of Rosenberg v. Crandell, 56 F.3d at 37. Therefore, absent any additional evidence to show that Defendants acted with deliberate and reckless disregard for Plaintiff's health and safety, the Court finds as a matter of law that Plaintiff fails to support an Eighth Amendment claim for relief.

IV.   **Conclusion**

IT IS, THEREFORE, ORDERED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 61) is GRANTED.

2. Plaintiff's Complaint is DISMISSED with prejudice.

7

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 24th day of March, 2021.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE